## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN DOES #1–9, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No. 3:21-cv-00590 – LEAD CASE** |
| | ) | **Case No. 3:21-cv-00593** |
| WILLIAM LEE, in his capacity as | ) | **Case No. 3:21-cv-00594** |
| Governor of the State of Tennessee, | ) | **Case No. 3:21-cv-00595** |
| and DAVID RAUSCH, in his capacity as | ) | **Case No. 3:21-cv-00596** |
| Director of the Tennessee Bureau of | ) | **Case No. 3:21-cv-00597** |
| Investigation, | ) | **Case No. 3:21-cv-00598** |
| | ) | **Case No. 3:21-cv-00624** |
| Defendants. | ) | **Case No. 3:21-cv-00671** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |

## ORDER

On March 2, 2023, the court entered an Order (Doc. No. 135) denying the Motion for Summary Judgment filed by Governor William Lee ("Governor") and Director David Rausch of the Tennessee Bureau of Investigation ("Director") (Doc. No. 115) and granting the Motion for Summary Judgment filed by the plaintiffs (Doc. No. 121). The Governor and Director appealed, and the Sixth Circuit affirmed the court's ruling in part and reversed it in part. *Doe v. Lee*, 102 F.4th 330, 342 (6th Cir. 2024). The Sixth Circuit remanded the case with "directions to DISSOLVE the injunction against Governor Lee and DISMISS him from this action, to VACATE the declaratory judgment against all parties, and to MODIFY the injunction against Director Rausch consistent with this opinion." *Id.* at 342. This Order addresses the mechanisms through which the court will comply with those instructions, as well as the pending Motion for Attorneys' Fees (Doc. No. 142).

### 1. Dismissal of the Governor

The first of the Sixth Circuit's instructions is easily followed. The court will dismiss Governor Lee from this matter, and the modified injunction will not be directed at him.

### 2. Denial of Declaratory Relief

Although the declaratory judgment in this case was against the defendants alone, the court's reasoning for granting declaratory relief, in addition to injunctive relief, relied on "the plaintiffs' desire for a declaration of rights to which they can point" if one of the various parties charged with enforcing the challenged restrictions, other than the defendants themselves, failed to recognize the change in the plaintiffs' status. (Doc. No. 134 at 41.) The plaintiffs' fear that Tennessee authorities might treat them as subject to registry-related restrictions, despite having obtained an injunction to the contrary, was not merely the result of idle speculation; that exact thing happened to another plaintiff in another of the many cases involving these issues. *See Doe v. Lee*, No. 3:21-CV-00028, 2022 WL 1752184, at *3 (M.D. Tenn. May 31, 2022).

Whether or not the plaintiffs' concern was legitimate, however, the court's power to grant declaratory relief extends only to cases in which such relief is necessary in light of the specific dispute before it. The court construes the Sixth Circuit's discussion of declaratory judgment to hold that this court erred in considering the usefulness of the declaration, as shown to agencies and officers who are not directly subject to it, as part of its redundancy analysis. The court, accordingly, will not grant declaratory relief, because the plaintiffs have failed to establish that that relief would be non-redundant with regard to any action or behavior of the defendants.

### 3. Modification of the Injunction

Modifying the injunction requires the court to look more closely at the substance of the plaintiffs' claims. This case arises out of Tennessee's decision to retroactively impose an array of

Case 3:21-cv-00590   Document 157-1   Filed 08/27/24   Page 2 of 10 PageID #: 2361

severe restrictions and administrative burdens on individuals who have been placed on its sexual offender registry for crimes they committed before the registry's existence. The United States Constitution's Ex Post Facto Clauses make it unlawful to "retroactively . . . increase the punishment for criminal acts," *Collins v. Youngblood*, 497 U.S. 37, 43 (1990), and, as the Sixth Circuit held in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), simply funneling a retroactive punishment through an ostensibly civil registry does not cure the punishment's straightforward unconstitutionality. Accordingly, when a government retroactively imposes new burdens and restrictions on registrants, and a registrant challenges those burdens and restrictions, the court must look to a range of factors to determine they are truly civil or, rather, "punitive" and, therefore, within the scope of the Ex Post Facto Clauses. *See Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995).

The Supreme Court held in *Smith v. Doe*, 538 U.S. 84 (2003), that including an individual on a purely informational database of past offenders and requiring that individual to take some reasonable administrative steps to keep his entry up to date, is not, in and of itself, punitive. Like a number of states, however, Tennessee has chosen to impose a number of aggressive restrictions on registrants that, among other things, limit where they can live and work. Tennessee has also chosen to administer the registry in a way that requires registrants to comply with a number of extremely short deadlines, backed by potentially severe punishments if missed. This combination of aggressive restrictions and mandatory check-ins functions, in many ways, as simply another form of probation or parole. Probation and parole, however, are forms of punishment that cannot be applied retroactively. Michigan's similar—if not virtually identical—approach was held to be punitive in *Snyder*, 834 F.3d at 706.

The defendants in this case were largely, if not entirely, unable to distinguish the restrictions that Tennessee imposes from the corresponding restrictions found to be punitive in *Snyder*. The Sixth Circuit affirmed this court's holding that *Snyder* applies to this case and agreed with this court that any Tennessee provisions that "mirror" the restrictions held to be punitive in *Snyder* "must fail." *Doe v. Lee*, 102 F.4th at 339. The Sixth Circuit, however, held that this court erred by not performing a "provision-by-provision analysis of Tennessee's regulatory regime to determine which portions violate the Ex Post Facto Clause and which do not." *Id.* at 340. The Sixth Circuit focused, in particular, on the need to identify provisions that were upheld as nonpunitive in two earlier cases involving Tennessee's scheme, *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999) and *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007). The Sixth Circuit also held that the court erred by not focusing its injunction more closely on the "limited record-keeping powers" exercised by the Director, who maintains the registry but largely relies on local officials and the Tennessee Department of Correction to make day-to-day decisions regarding the corresponding restrictions' enforcement. *Id.* at 342.

The court is, therefore, required to modify its injunction in two ways, aside from simply dismissing the Governor: first, it must limit it to the provisions found to be punitive based on a "provision-by-provision analysis"; and, second, it must craft the injunction to focus, in particular, on what the Director can and cannot do under Tennessee's scheme. Each of those potential modifications, however, raises significant substantive and procedural questions that would be inappropriate for the court to simply resolve *sua sponte*. The court, accordingly, must determine the best process for allowing the parties to litigate the remaining issues.

**Structure of briefing.** The plaintiffs' § 1983 claims are based on the allegation that the Director unlawfully imposed punitive restrictions and requirements on them retroactively. Those

claims have never depended on any assertion that every aspect of the Tennessee registry is punitive; to the contrary, the plaintiffs and the court have recognized the binding holding in *Smith* throughout this litigation, as well as the fact that earlier, less severe versions of Tennessee's statutes were held to be civil in *Bredesen* and *Cutshall*. The plaintiffs' claims are merely that *some* aspects of Tennessee's scheme were improperly applied to them. The plaintiffs are, therefore, still entitled to summary judgment on the merits as long as the Director was responsible for imposing at least one punitive provision on them retroactively—which he clearly was.

For example, the Sixth Circuit, in *Snyder*, focused extensively on the punitive nature of geographic restrictions added to Michigan's laws in 2006, including a provision prohibiting registrants "from living, working, or 'loitering' within 1,000 feet of a school.'" *Snyder*, 834 F.3d at 698 (footnote omitted); *see* Mich. Comp. Laws Ann. § 28.734 (2007). Tennessee added a version of that loitering restriction in 2009, and it expanded its school zone-based restrictions to registrants whose victims were adults in 2014. *See* 2014 Tenn. Pub. Acts, ch. 992; 2009 Tenn. Pub. Acts, ch. 597. While the Director generally does not directly arrest or charge individuals for violating those restrictions, he, through the registry, has routinely transmitted to law enforcement information that he reasonably and actually knew would result in officials' treating the plaintiffs as subject to them. Section 1983, moreover, is expressly not limited to direct perpetrators; it reaches all situations in which the defendant, under color of law, "subjects, *or causes to be subjected*, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of" his federal rights. 42 U.S.C. § 1983. It, therefore, continues to be the case that the plaintiffs have established, through undisputed facts, that the Director caused them to be subject to at least one retroactive, punitive requirement under *Snyder*.

5

This court's determination that the plaintiffs are entitled to summary judgment against the Director on the merits is, therefore, unchanged by the Sixth Circuit's ruling. There is no doubt that a more detailed examination of Tennessee's scheme is necessary with regard to remedies, but the answer to the core question posed by § 1983—whether the Director, acting under color of law, caused violations of the defendants' federal rights—remains the same. The court will, therefore, vacate its earlier Order and grant the plaintiffs summary judgment again, but only in part. The court will then order a briefing schedule designed to address the appropriate relief to which the plaintiffs are entitled.

**Provision-by-provision elision analysis.** This court reads "provision-by-provision" literally. Accordingly, the parties will be required to take express positions with regard to every requirement and restriction imposed by Tennessee's sexual offender registry statutes and corresponding rules. For clarity and convenience, the court will require the parties to work together to jointly propose a numbered "master list" of those provisions, which will form the backbone of the ensuing briefing.

The Sixth Circuit has stated that the court's consideration on remand should focus, in particular, on comparing those provisions to (1) the 2006 and 2011 Michigan amendments addressed in the holding of *Snyder*, (2) the older versions of Tennessee's statutes held to be nonpunitive in *Cutshall* and *Bredesen*; and (3) the Alaska statute upheld in *Smith*. The court, accordingly, will require the parties to cite the specific corresponding statutory sections that they believe to be comparable from those cases. Each citation must be to an actual statute or regulation—not a description thereof from a case or some other source. Each discussion of a deadline must include a specific numerical description of the deadline—e.g., "two days."

**The Director's responsibilities.** The Sixth Circuit held that "[t]he only injunction potentially warranted against [the] Director . . . would be a limited one prohibiting him from exercising his limited record-keeping powers under Tennessee law in a way that violates Plaintiffs' rights under our Ex Post Facto Clause analysis." *Doe v. Lee*, 102 F.4th at 341–42. "Limited," however, does not necessarily mean "minor." The Director plays a limited role in Tennessee's registry scheme in the same way that the engine plays a limited role in a car. Every single decision made by any official based on the registry is a direct result of an action by the Director, who possesses exclusive control over what that registry actually says.

It is hard to overstate just how much local officials rely on the Director's performance of his responsibilities in that capacity. Local governments—unlike the State of Tennessee—face potential monetary liability if they choose to enforce Tennessee's scheme in an unconstitutional manner. *See Jordan v. Lee*, No. 3:19-CV-00907, 2022 WL 1196980, at *20 (M.D. Tenn. Apr. 21, 2022). Accordingly, their ability to enforce Tennessee's restrictions *at all* is inextricably tied to their practical ability to do so without routinely breaking the law. For that, they rely on the registry to tell them what they need to know. While local law enforcement officers may be able to look up offense dates on their own, it is obviously impractical to expect them to engage in complex retroactivity calculations on the fly. The Director, however, has left those local officials totally adrift.

The practical challenges of adopting a set of distinctions within Tennessee's registry scheme based on date of offense was the focus of this court's original remedies analysis, and, while the Sixth Circuit took issue with this court's ultimate conclusions, nothing about the Sixth Circuit's decision draws those concerns into question or requires the court to ignore them now. As the court wrote before:

> The [Tennessee registry law], by its very structure, relies on a diffusion of responsibility between various individuals and agencies for its enforcement and administration. *See, e.g.*, Tenn. Code Ann. § 40-39-202 (defining local law enforcement agencies and the Tennessee Department of Correction as "designated law enforcement agencies" for administration of the Act). There is no evidence before the court that TBI or other sectors of Tennessee law enforcement are actually capable of implementing . . . a judicially created, tiered system of registration based on the registrant's date of offense.

*Does #1-9 v. Lee*, 659 F. Supp. 3d 865, 893 (M.D. Tenn. 2023). All of that remains true. The Director's responsibilities may be "limited," but they are still *his* responsibilities, and he has an obligation to fulfill them in a way that does not directly result in obvious, foreseeable violations of the plaintiffs' constitutional rights. The record, however, remains silent regarding his ability to do so.

This court has a binding obligation to craft its injunction so as to actually grant the plaintiffs the relief to which they are entitled. It is in the interest of all parties that the court craft that required relief in a manner that can actually be implemented, without unnecessary expense, by the Director. The court cannot do so, however, without the Director's participation. The court, accordingly, will require the Director to file declarations and/or other evidence establishing how his agency will ensure that law enforcement or other officials who access the plaintiffs' registrations in connection with the system overseen by the Director will be placed on notice regarding which restrictions can and cannot be enforced against the plaintiffs. If the Director fails to do so, the court will have no choice but to simply order the Director to change the state's systems in a manner, and according to a timetable, determined by the court.

Based on the foregoing, the court's Order and Entry of Judgment of March 2, 2023 (Doc. No. 135; Doc. No. 136) are hereby **VACATED**. The defendants' Motion for Summary Judgment (Doc. No. 115) and the plaintiffs' Motion for Summary Judgment (Doc. No. 121) are each **GRANTED** in part and **DENIED** in part, and all claims against the Governor are **DISMISSED**.

8

The plaintiffs' Motion for Attorney's Fees (Doc. No. 142) is hereby **DENIED** as moot, without prejudice to seeking fees at a later date.

It is hereby **ORDERED** that the parties shall comply with the following briefing schedule:

- Within 30 days of this Order, the parties shall confer and file a joint, numbered Master List of all requirements associated with the Tennessee sexual offender registry. Although the list may cite to Public Acts to explain dates of enactment, each requirement shall be identified with a citation to the actual, binding provision at issue in either the Tennessee Code Annotated or, insofar as it is applicable, the Tennessee Administrative Code.

- Within 21 days of the filing of the Master List, each party shall file a Motion to Modify Injunction accompanied by a Memorandum in support. The parties' papers must comply with the following requirements:

  - Each Memorandum must include a copy of the Master List, and each entry of the Master List in the brief shall include the following:

    - The party's position regarding whether the provision at issue is punitive;

    - Citations to prior Tennessee, Michigan, and/or Alaska statutes, if any, to which the party believes each specific provision is comparable for the purposes of applying *Cutshall*, *Smith*, *Bredesen*, and/or *Snyder*;

    - Where applicable, the precise number of days associated with any provision—either in Tennessee's current scheme or in a comparator provision—involving a deadline.

  - The Director's motion must be accompanied by declarations and/or other materials setting out a plan pursuant to which the Director will ensure that officials who access the plaintiffs' registry entries will be placed on notice

9

regarding which restrictions or requirements apply to the plaintiffs and which do not.

- Responses shall be filed within 30 days and Replies shall be filed within 15 days of the Responses.

It is so **ORDERED**.


ALETA A. TRAUGER
United States District Judge